No. 75,207

In the Matter of KENNETH F. CROCKETT, *Respondent.*
(912 P.2d 176)

Opinion filed March 8, 1996.

*Marty M. Snyder*, deputy disciplinary administrator, argued the cause, and *Mark F. Anderson*, disciplinary administrator, and *Stanton A. Hazlett*, chief deputy disciplinary administrator, were with her on the formal complaint for petitioner.

*Kenneth F. Crockett*, respondent, argued the cause pro se.

*Per Curiam:* This is an attorney discipline proceeding involving respondent Kenneth F. Crockett, an attorney licensed to practice law in Kansas, whose last registration address is in Topeka.

The complainants, Mr. and Mrs. Gerald Ashton, had entered into a contract for construction of a residence with Dean Miller Construction Company. There were cost and time overruns and allegations of poor and unfinished work. The Ashtons met with respondent on October 30, 1989, to discuss the construction problems. After additional meetings and telephone calls, the Ashtons retained respondent and paid a $500 retainer on December 6, 1989.

Respondent wrote a demand letter on December 18, 1989. On January 3, 1990, he toured the home with his clients and on January 9, 1990, he toured the home again with his clients and Miller and Miller's attorney, Greg Lee. In an exchange of letters, the parties attempted to negotiate final repairs and final payments, but this attempt failed.

On February 13, 1990, the construction company sued the Ashtons to foreclose its contractor's lien and recover $25,500 still unpaid on the contract. The mortgagor and additional subcontractors were named as additional defendants to require them to assert any claims in the matter. Respondent filed a timely answer and counterclaim asserting damages to the Ashtons of $35,000. Respondent promptly answered plaintiff's request for discovery and statement of monetary damages. In a letter dated April 4, 1990, Mr. Lee

suggested arbitration, which was later declined by the Ashtons. On April 16, 1990, a pretrial conference was held before the district judge. At that time a trial date of May 8, 1990, was set if no arbitration was conducted.

The parties appeared for trial on May 8, 1990. At that time, however, the judge took counsel into chambers and announced he had decided to attempt an alternative to trial. With the consent of counsel, a contractor was appointed to be the court's expert witness. The contractor was to inspect the home and note needed repairs, and Miller would have an opportunity to correct them. Unfortunately, none of this proceeding was recorded by the court or journalized by counsel. The procedure was attempted. Miller performed some of the repairs suggested by the contractor but not others. The Ashtons eventually refused to permit Miller access to their home to make repairs and elected to return to court.

In a December 10, 1990, letter decision, the district judge determined that all issues had been decided and no counterclaim was preserved when the contractor alternative was agreed to by the parties in May 1990. Respondent, without any documentation, disputed this ruling. The court's decision was journalized by plaintiff's counsel and filed on January 11, 1991.

Timely notice of appeal was filed by respondent on January 23, 1991, and the appeal was docketed on that date. On February 23, 1991, the Court of Appeals issued a show cause order pointing out that two additional defendants originally sued were not addressed in the decision letter or journal entry. Plaintiff's counsel prepared a new journal entry of dismissal with prejudice as to those parties. That journal entry was filed with the district court and the Court of Appeals on March 15, 1991.

On March 21, 1991, the Court of Appeals issued a second show cause order, stating the original appeal was prematurely filed and no timely notice of appeal from the March 15, 1991, journal entry had yet been filed. Respondent did not act on this notice. Rather, on April 3, 1991 (mailed March 19, 1991), he responded out of time to the first show cause order (which had been mooted by the March 15, 1991, journal entry). On April 16, 1991, respondent filed a response to the second show cause order. The certificate of mail-

ing was dated April 12, 1991, but was not received by the Clerk of the Appellate Courts until April 16, 1991.

On April 25, 1991, the Court of Appeals issued a third show cause order, pointing out that the April 16, 1991, response was filed outside the 30-day appeal time from the March 15, 1991, journal entry. No response was filed by respondent. On May 20, 1991, the appeal was dismissed for failure to respond to the third show cause order and for untimely filing of the appeal. The $25,000 construction fund held by the district court was ordered paid to plaintiff Miller Construction.

Respondent never notified his clients of the May 20, 1991, dismissal or that the $25,000 construction fund had been paid to the plaintiff. Rather, he ignored their repeated contacts for the next 3 years and put them off with vague references to canceled court dates and "the due process of law."

The Ashtons became more persistent in wanting an answer. In March 1994 respondent prepared his own trust account check for $11,844.19 rather than explaining the dismissal and the reasons behind it. The Ashtons stated that the respondent told them the check represented an out-of-court settlement. The check was mailed to the Ashtons in April 1994, accompanied by a document titled "Disbursement" purporting to be a settlement of the Ashtons' counterclaims. Respondent canceled meetings that had been set with the Ashtons, and he failed to return phone calls.

In the fall of 1994 the Ashtons checked with the Clerk of the Appellate Courts to determine what had occurred and learned their appeal had been dismissed in 1991. They then filed this disciplinary complaint against respondent. The following is a letter dated October 4, 1994, from Gerald Ashton to Bruce E. Miller, Disciplinary Administrator:

"On December 6, 1989 we paid a retainer to Mr. Kenneth Crockett of $500.00 to represent us in a suit against Dean Miller. We were having a new home built and were having trouble with the builder.

"On May 8, 1990 we went to court on this case. We lost the case and Mr. Crockett filled [sic] an appeal on our behalf. In January of 1991 Mr. Crockett filed the appeal. The appeal number is 91-66112-A.

"On February 7, 1991 we paid into the court the sum of $28,122.67 under case #90-CV-308. We called Mr. Crockett numerous times from January 1991 until after receiving a check from Mr. Crockett in April of 1994. Each time Mr. Crockett told us 'It was the due process of law' that was taking so long on the appeal.

"We were told by Mr. Crockett that a court date of September 29, 1993 at 1:30 had been set for our appeal. Mr. Crockett later called and said the court had cancelled the date and he would let us know when it would be rescheduled.

"On October 6, 1993 we contacted Mr. Crockett. On October 9 Mr. Crockett brought Mr. R. L. Olden to check our house for nail pops and to repaint the interior. Mr. Olden estimated this part of the corrections at $2,875.00. We then started calling Mr. Crockett more often to find out what was taking so long. When we were able to reach him he would again say it was the 'due process of the law.'

"We called Mr. Crockett on November 9, 1993. On November 30, 1993 Mr. Crockett meet [sic] with us at our home. He told us he was working on getting us a new court date. After not hearing from Mr. Crockett over the holiday we called him on January 20, 1994. Mr. Crockett never returned this call so we called him again on January 26, 1994. Mr. Crockett then returned this call on January 31, 1994 saying he had been out of town and was still waiting on a court date.

"On April 27, 1994 and again April 29, 1994 we called Mr. Crockett and never received a return call. On May 19, 1994 Mr. Crockett left a message on our answering machine that he was going to Kansas City but would meet us at his office at 5:30. We went to his office but he never showed up.

"We have recently learned that our appeal case had been thrown out of court in 1991 because of Mr. Crockett's failure to file some papers in the proper time frame.

"Not only has my builder got away with his sloppy work and screwing the public, now I find out our Attorney has lied to us. We have lost five years of enjoyment on our house as we have been waiting until after things were settled before making some of the corrections to our home. I feel we should be compensated for our lose [sic] of time and happiness."

Respondent was ordered to respond to the complaint within 7 days of an October 13, 1994, letter from the disciplinary administrator. On October 23, 1994, respondent requested an extension until the week of November 7, 1994.

The following is part of a letter dated November 9, 1994, from Kenneth F. Crockett to Robert Baer, a member of the Topeka Bar Association Ethics and Grievance Committee appointed to investigate the complaint:

"[T]he Court dismissed the Appeal for not being timely filed, even though the appellate rules allow for the court to consider an appeal to be timely, though premature, although I still contend that was not the issue in this case.

"That is a chronology of the case. After a determination was made with the agreement of the Ashtons as to the cost of repairing what they contended to be the remaining deficiencies (kitchen floor, dry-wall, paint, etc.), I personally paid Mr. & Mrs. Ashton what those items totalled. Although I remain of the opinion that the Court of Appeals wrongly dismissed the appeal, I accept the responsibility for the appeal being dismissed.

"I believed the sum of money I paid Mr. & Mrs. Ashton to be the amount which would make them whole. I did not indicate to them that the case 'had been settled'; when I informed them the money was being sent, I told them that I was sending them the money for the floor, dry-wall, etc., and if they had any questions to let me know. I do not show that I had any response other than the complaint in question. If they dispute that, then I respectfully suggest we can either negotiate any added amount, and if not, then they have their remedy to file suit and I will voluntarily enter my appearance and submit the issue to a court.

"If there is additional information you desire, please advise."

This response was received by the investigator on December 13, 1994. The investigator followed up with his own letter on December 16, 1994, with additional questions when his telephone messages were not returned. Respondent did not respond to the December 16, 1994, letter or the telephone calls from the investigator.

Prior to the hearing before the panel, respondent had moved for a continuance on the grounds that he had had insufficient time to obtain counsel and did not feel confident to represent himself before the hearing. After the panel decided that the hearing would proceed, respondent announced that he was going to absent himself from the hearing, and he exited the hearing room.

The hearing panel proceeded and found by clear and convincing evidence that respondent violated the following rules: MRPC 1.1 (1995 Kan. Ct. R. Annot. 251) (competency), 1.3 (1995 Kan. Ct. R. Annot. 257) (diligence), 1.4 (1995 Kan. Ct. R. Annot. 263) (failing to reasonably inform client), and 8.4(c) and (d) (1995 Kan. Ct. R. Annot. 340) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation; engaging in conduct prejudicial to the administration of justice), and Rule 207 (1995 Kan. Ct. R. Annot. 202) (failing to properly respond to the disciplinary administrator or investigating attorney). The panel did not find that violations of

MRPC 1.15 (1995 Kan. Ct. R. Annot. 294) (safekeeping property), 1.16 (1995 Kan. Ct. R. Annot. 300) (declining or terminating representation), and 4.1 (1995 Kan. Ct. R. Annot. 323) (truthfulness in statements to others) had been proven by clear and convincing evidence.

The hearing panel noted as aggravating circumstances that respondent received an informal admonition a number of years ago for apparently refusing to follow court orders; that in handling this matter respondent had a dishonest or selfish motive since he attempted to conceal the truth from the complainants by writing them a check for over $11,000 and attaching it to a document that appeared to be a settlement document; that there were multiple offenses in connection with this complaint; that there was a bad faith obstruction of a disciplinary proceeding up to the time respondent made a motion for a continuance of the disciplinary proceedings, showing that respondent did not take the disciplinary process seriously; and that the complainants were damaged by respondent's actions. The panel also noted that it appeared respondent was attempting to make restitution when he wrote a check out of his trust fund. The panel was not presented with any mitigating circumstances because respondent left the hearing.

The hearing panel recommended that respondent be suspended from the practice of law for a period of 1 year. The panel further recommended that the respondent pay the complainants the sum of $4,460 in restitution and pay the costs of the disciplinary proceeding. Respondent did not file any exceptions to the panel's report. The matter was set for hearing on the January 1996 docket of this court.

Respondent appeared pro se at the hearing before this court. Even though the respondent had left the hearing before evidence was presented, he asserted that after receiving the hearing panel's report, he had mailed to this court exceptions to the panel's report. Respondent's exceptions to the panel's report were not received by the Clerk. Respondent claimed the mail service had failed to deliver the exceptions. Respondent further stated he had informed his former clients of the dismissal of the appeal and they had agreed to accept the $11,000 as full satisfaction of any claim they may have

had against him. Respondent also indicated that his former clients had perjured themselves when testifying before the panel. Respondent asserted that he should not be sanctioned.

*In re Christian*, 238 Kan. 451, 709 P.2d 987 (1985), is a similar type of original proceeding in discipline. There, on or about September 3, 1982, Hans Burgdorf retained Christian and the law firm of which he was a member to represent him in connection with a personal injury claim against the owners of Paradise Lake, a recreational lake in Sedgwick County. Hartford Insurance Company was the liability insurance carrier for Paradise Lake and was also a client of Christian's law firm. Christian failed to secure a settlement of the client's claim and failed to file suit prior to the running of the statute of limitations. Christian did not advise his client that the claim was barred by the statute of limitations, nor did he advise his law partners. Christian advised the client that he had an offer of $1,500 from the insurance company, that the amount was all the company would pay, and that the client should accept. The client agreed and accepted the $1,500, which was actually paid by Christian's law firm and not the insurance company. Subsequently, the law firm discovered the questionable disbursement and, upon questioning, Christian admitted what had occurred. Christian and the law firm each reported what had occurred to the Disciplinary Administrator.

The Kansas Board for Discipline of Attorneys held a hearing on the disciplinary complaint against Christian, and the hearing panel unanimously found that there was clear and convincing evidence Christian had neglected a legal matter entrusted to him in violation of DR 6-101(A)(3); that Christian had engaged in dishonesty, deceit, and misrepresentation in violation of DR 1-102(A)(4); that Christian's conduct adversely reflected on his fitness to practice law in violation of DR1-102(A)(6); that his attempt to limit his liability to his client for his personal malpractice violated DR 6-102(A); and that he knowingly made false statements of law and fact in violation of DR 7-102(A)(5). The panel recommended that Christian be suspended from the practice of law for 1 year.

The *Christian* court noted that in considering disciplinary proceedings, the Supreme Court is not bound by the recommenda-

tions of the Kansas Board for Discipline of Attorneys and the recommendations of the panel are advisory only, citing Supreme Court Rule 212(f) (1995 Kan. Ct. R. Annot. 215), and *State v. Davitt*, 234 Kan. 283, 671 P.2d 1123 (1983). A minority of the members of the *Christian* court agreed to accept the recommendation of the disciplinary panel, but a majority of the *Christian* court was of the opinion that due to the serious nature of Christian's conduct, he should be indefinitely suspended from the practice of law in Kansas. Christian was indefinitely suspended from the practice of law in Kansas, and he was assessed the costs of the action.

We note that there are two factual differences between *Christian* and this matter. First, Christian paid the purported settlement with his firm's money without informing the firm. Here, the respondent paid the purported settlement with his own funds. Second, Christian's firm informed the client of what had occurred and suggested that the client seek independent advice. Here, the respondent did not inform the Ashtons what had occurred and failed to suggest that they seek independent advice from another attorney.

We hold that the findings and conclusions of the hearing panel are supported by clear and convincing evidence. After a careful review of the record, a majority of this court accepts the recommendation of the disciplinary panel that respondent be suspended from the practice of law for 1 year. However, a minority of the members of the court would reject the recommendation of the disciplinary panel and would indefinitely suspend respondent from the practice of law in Kansas because of the serious nature of his actions.

IT IS THEREFORE ORDERED that Kenneth F. Crockett be and he is hereby disciplined for violations of MRPC 1.1, 1.3, 1.4, 8.4(c), 8.4(d), and Rule 207.

IT IS FURTHER ORDERED that Kenneth F. Crockett be suspended from the practice of law in the State of Kansas for a period of 1 year effective March 8, 1996.

IT IS FURTHER ORDERED that Kenneth F. Crockett shall make restitution as recommended by the hearing panel, plus interest,

prior to the filing of any petition for reinstatement pursuant to Supreme Court Rule 219 (1995 Kan. Ct. R. Annot. 229).

IT IS FURTHER ORDERED that Kenneth F. Crockett shall comply with Supreme Court Rule 218 (1995 Kan. Ct. R. Annot. 222) and shall pay the costs of this action.

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports.

SIX, J., dissenting: No exceptions to the panel's findings and conclusions are in the record. The panel found as one of its conclusions that respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation and engaged in conduct that is prejudicial to the administration of justice. MRPC 8.4(c) and (d) (1995 Kan. Ct. R. Annot. 340). I would follow *In re Christian,* 238 Kan. 451, 709 P.2d 987 (1985), and impose indefinite suspension.

MCFARLAND, C.J., and LOCKETT, J., join the foregoing dissent.